IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

----

ROGER ARDEN ELSETH; PATRICIA ANN )
ELSETH; and ALLEN ELSETH by his )
*guardian ad litem* ROGER ARDEN )
ELSETH and PATRICIA ANN ELSETH, )
                                                          )
          Plaintiffs,        )   2:08-cv-02890-GEB-KJM
                                                          )
     v.                       )   ORDER GRANTING DEFENDANT
                                                          )   RICHARD SAXTON AND DEFENDANT
VERNON SPEIRS, Chief Probation )   DAVID GORDON'S MOTIONS TO
Officer of the County of )   DISMISS
Sacramento, individually; DAVID )
GORDON, Superintendent Sacramento )
County Department of Education, )
individually; Deputy Probation )
Officer RONALD TAM, individually; )
Deputy Probation Officer JEFF )
ELORDUY, individually; DR. RICHARD )
SAXTON, M.D., individually, )
                                                          )
         Defendants.       )
_____)

         Defendant Richard Saxton ("Saxton") filed a dismissal motion on December 29, 2009, under Federal Rule of Civil Procedure ("Rule") 12(b)(6), arguing the claims against him in what Plaintiffs' designate as their Fifth Amended Complaint ("FAC"), are insufficient to state viable claims. What Plaintiffs designate their "Fifth Amended Complaint" is actually their fourth amended complaint. Saxton also moves in the alternative under Rule 12(e) for an order requiring Plaintiffs to make a more definite statement of their claims.

         Defendant David Gordon ("Gordon") also filed a motion to dismiss the FAC on January 4, 2010, under Rules 12(b)(6) and 12(b)(1). Gordon also moves in the alternative for an order under Rule 12(f) that would strike Plaintiffs' educational accommodations claim.

1

Plaintiffs' claims are based on physical abuse Plaintiff Allen Elseth ("Allen") allegedly suffered at B.T. Collins, a juvenile hall in Sacramento, California. Plaintiffs Roger Arden Elseth and Patricia Ann Elseth ("the Elseths") are Allen's parents.

## I. LEGAL STANDARDS

### A. Motion to Dismiss under Rule 12(b)(6)

When deciding a Rule 12(b)(6) dismissal motion, all material allegations in the complaint must be accepted as "true and construed in the light most favorable to the nonmoving party." Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). However, this "tenet" "is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009). Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. Id.

### B. Motion to Dismiss under Rule 12(b)(1)

"[T]he court may determine jurisdiction on a motion to dismiss for lack of jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure" "[u]nless the jurisdictional issue is inextricable from the merits of a case." Kingman Reef Atoll Invs., L.L.C. v. United States, 541 F.3d 1189, 1195 (9th Cir. 2008). "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence." Rattlesnake Coal. v. E.P.A., 509 F.3d 1095, 1102 n. 1 (9th Cir. 2007) (internal reference omitted).

### C. Plaintiffs' Request for Judicial Notice

Plaintiffs filed an opposition to each motion, and request that judicial notice be taken of four documents: (1) a "[Probation] Order of Commitment, pages 11 to 13, to Juvenile Hall" ("Probation Order"); (2) a "Consent Decree, David Porter v. Verne Speirs, etc,

Sacramento Superior Court, No. 06AS03654" ("Consent Decree"); (3) "Photographs of Allen upon which Dr. Rosas [allegedly] relied for her report [of Allen's alleged abuse, on which Plaintiffs base their claims of abuse alleged in the FAC]" ("Photographs of Allen"); and (4) a Sacramento Superior Court Grand Jury Report, which Plaintiffs filed in this action on February 3, 2009 ("Grand Jury Report"). (Request for Judicial Notice ("RFJN") 1.) Gordon opposed Plaintiffs' judicial notice request.

"Federal Rule of Evidence 201(b) permits judicial notice of an adjudicative fact that is 'not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" United States v. Daychild, 357 F.3d 1082, 1099 (9th Cir. 2004)(citing Fed. R. Evid. 201).

Gordon argues the Probation Order has not been authenticated and is disputed. Further, Gordon argues "neither the cover page which identifies the document [,] nor any type of signature page is present, and some portions of page 12 are crossed off." (Opp'n to RFJN 3:21-25.) Gordon argues "[a] trial court . . . . is not permitted to take judicial notice of any facts found by a court in another judicial proceeding" and therefore, "regardless of whether or not [P]laintiff[s] can establish that this document is what [they] claim[], the Court cannot take [judicial notice] of any of the facts that are represented by this document." (Id. 4:1-7.) Lastly, Gordon argues the document is irrelevant to the claims against him. (Id. 4:8.)

1 Plaintiffs have not established the foundation required for
2 the judicial notice they seek of the Probation Order; the document is
3 not signed or otherwise authenticated.  Therefore, Plaintiffs' request
4 for judicial notice of the Probation Order is denied.
5 Gordon also objects to judicial notice being taken of the
6 Consent Decree, arguing it is not properly subject to judicial notice
7 because there are no adjudicative facts in this document.  Gordon also
8 argues what Plaintiffs seek to do is to use factual findings in
9 another case to "establish[] [Plaintiffs'] argument," which is
10 inappropriate because another case "cannot be used to establish the
11 factual context for the instant case." (Opp'n to RFJN 5:7-12.)
12 Further, Gordon argues the Consent Decree is irrelevant since it
13 states explicitly that it "does not address or in any way resolve
14 claims against [Gordon][;]" and as to the actual defendants involved
15 in the Consent Decree case, the Consent Decree states: "[n]othing
16 herein shall constitute or be used as evidence of any admission of
17 wrongdoing or liability by Defendant[s]." (Id. 5:20-21.)  Gordon also
18 argues that the Consent Decree states it "shall not be used in any
19 other case, claim or administrative proceeding, except . . . to assert
20 issue preclusion or *res judicata*."  (Id. 5:24-25)(emphasis in
21 original).
22 "[T]aking judicial notice of findings of fact from another
23 case exceeds the limits of Rule 201." Wyatt v. Terhune, 315 F.3d
24 1108, 1114 (9th Cir. 2003).  Since Plaintiffs have not shown it is
25 appropriate to take judicial notice of the Consent Decree, this
26 request is denied.
27 Gordon also objects to Plaintiffs' request for judicial
28

4

1  notice of the Photographs of Allen, arguing they are not authenticated
2  and it is unknown "who took the photos, when they were taken,
3  [whether] they were in fact relied upon by Dr. Rosas [a doctor who
4  allegedly witnessed the consequences of Allen's alleged abuse], or in
5  what manner [Dr. Rosas] 'relied' upon them." (Opp'n to RFJN 6:9-15.)
6  Further, Gordon argues the Photographs of Allen are "irrelevant to the
7  issues alleged against Gordon" since "[Allen] has not alleged that
8  Gordon ever saw [or was aware of] any part of the incident which
9  [Plaintiffs'] claim[] resulted in [Allen's] injuries." (Id. 6:16-20.)

10  "Authentication is a condition precedent to admissibility
11  and this condition is satisfied by evidence sufficient to support a
12  finding that the matter in question is what its proponent claims." Orr
13  v. Bank for America, NT & SA, 285 F.3d 764, 773 (9th Cir.2002)
14  (internal quotes and citation omitted).  Plaintiffs have not
15  authenticated the Photographs of Allen.  Therefore, the issue whether
16  judicial notice may be taken of these photographs is not decided since
17  Plaintiffs have shown that the unauthenticated photographs should be
18  considered in the decision on the motions.  Therefore, Photographs of
19  Allen are disregarded.

20  Gordon also objects to Plaintiffs' request that judicial
21  notice be taken of Grand Jury Reports filed in this case on February
22  3, 2009.  Plaintiffs argue the Grand Jury Reports support "the
23  proposition that the conditions [at the juvenile hall] were generally
24  known, and given the investigation, it hardly seems plausible that
25  [Saxton and] Gordon could have been unaware of the problems prior to
26  Allen's presence at, and injuries in, the facility." (Opp'n 1:17-26.)
27  Gordon counters the Grand Jury Reports are "double hearsay" and
28  irrelevant since most of the reports concern a time period several

1  years before Allen arrived at juvenile hall, and have not been shown
2  relevant to the matters about which Plaintiffs complain.  (Opp'n to
3  RFJN 6:24-7:21.)
4        Plaintiffs have not shown it is appropriate to take
5  judicial notice of the pages from the Grand Jury Reports they have
6  provided, or that those pages are relevant to their claims.
7  Therefore, this portion of Plaintiffs' request for judicial notice is
8  also denied.

## II. ANALYSIS

10       Saxton and Gordon each seek dismissal of Plaintiffs' Eighth
11 and Fourteenth Amendment claims, arguing the claims are not viable.
12 Allen alleges he has a "constitutional[] right to be free of
13 gratuitously-inflicted corporal punishment" and a court-ordered right
14 to services necessary for his rehabilitation. (FAC ¶¶ 8.2, 9.2.)
15 Allen also alleges Gordon violated his "***statutory*** right" to be free of
16 gratuitously inflicted corporal abuse . . . ." (FAC ¶ 8.2)(emphasis
17 added).  Allen does not specify the source of the referenced statutory
18 and court-ordered rights.
19       The Elseths allege they "have a constitutionally[] protected
20 right to parental notification with respect to the care and treatment
21 of Allen, including abuse and denial of services." (Id. ¶¶ 8.3, 9.3.)
22 The Elseths also allege against Gordon that a ***"court[-]ordered"*** "basic
23 services for his rehabilitation." (Id. ¶ 8.3)(emphasis added).
24 However, the Elseths have also failed to explain what is referenced by
25 "court-ordered" or that whatever this means applies to any of their
26 allegations.
27       Plaintiffs allege each movant violated their constitutional
28 rights by acting "with deliberate administrative indifference or

6

willful neglect [and] contribut[ing] to the corporal abuse of Allen and an environment that led to the failure of service to Allen by failing to report the abuse and failure of services to the Elseths, Child Protective Services, and other authorities outside the juvenile system." (Id. ¶¶ 8.4, 9.4.)  Plaintiffs also allege that "[a]s a direct and proximate result of [each movant's] conduct, Child Protective Services, and other authorities, were not notified, and the Elseths were denied[] information necessary to take appropriate action on behalf of Allen concerning his physical abuse and denial of remedial services while in the Juvenile Detention Facilities." (Id. ¶¶ 8.5, 9.5.)  Further, Allen alleges due to Gordon's specific conduct, he "was injured and otherwise denied services necessary for rehabilitation." (Id. ¶ 8.6.)

        The movants seek dismissal of Allen's claims that they were deliberately indifferent or willfully neglectful in violation of the Eighth Amendment's proscription against cruel and unusual punishment. Plaintiffs concede to a portion of Gordon's motion in their opposition brief, stating they "had no intent to allege [an Eighth Amendment claim of] inadequate medical care against Gordon; only against Saxton." (Opp'n to Gordon's Mot. 10:6.)  Plaintiffs reveal in their opposition brief that Allen's Eighth Amendment claim against Saxton is based on the alleged abuse and inadequate medical care Allen received, and his Eighth Amendment claim against Gordon is based only on the alleged abuse.

        As was previously explained in a prior order dismissing Allen's Eighth Amendment claims, Allen is required to allege that Saxton was "'deliberate[ly] indifferen[t]'" to Allen's "'serious medical needs'" or subjected  Allen to a "substantial risk of serious

7

harm." Estelle v. Gamble, 429 U.S. 97, 104 (1976); Farmer v. Brennan, 511 U.S. 825, 828 (1994). Further, Allen is required "show a serious medical need by demonstrating th[ere was a] failure to treat [a specified] condition [and this failure] could result in further significant injury or the unnecessary and wanton infliction of pain [, and that Saxton's] response to the need was deliberately indifferent." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)(internal citations and quotations omitted). Allen is also required to show that Saxton "acted or failed to act despite [his] knowledge of a substantial risk of serious harm" to which Allen was exposed. Farmer, 511 U.S. at 842.

Allen has again failed to allege "facts from which the inference could be drawn" that Saxton's response to Allen's serious medical need, or to a substantial risk of serious harm to which Allen was allegedly subjected or experienced, was deliberately indifferent. Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004). Therefore, Allen's Eighth Amendment claim against Saxton is dismissed.

Allen also fails to allege that Gordon had knowledge of the "substantial risk of serious harm" or of the abuse to which Allen was allegedly subjected at B.T. Collins. Plaintiffs state in their opposition to Gordon's motion that Gordon "should have known" of the alleged abuse at B.T. Collins; however, the FAC is devoid of factual allegations supporting this conclusory statement. (Opp'n to Gordon's Mot. 14:17.) Therefore, Allen's Eighth Amendment claim against Gordon is dismissed.

The movants also seek dismissal of Allen's Fourteenth Amendment Due Process claims in which Allen alleges each movant is liable for failure to report lack of rehabilitative services at B.T.

Collins.  "A due process claim is cognizable only if there is a recognized liberty or property interest at stake."  Rizzo v. Dawson, 778 F.2d 527, 530 (9th Cir. 1985).  Since "there is no constitutional right to rehabilitation" for prisoners, Rizzo, 778 F.2d at 531, see also Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976), and "Plaintiffs concede that Allen [was] a 'prisoner' within the meaning of the [Prisoners Legal Remedies Act]," (FAC ¶ 5.3), Allen has "alleged no liberty or property interest sufficient to trigger due process protection in his . . . complaint."  Rizzo, 778 F.2d at 530.  Therefore, these claims are dismissed.

      The movants also seek dismissal of the Elseths' Fourteenth Amendment due process claims which are based on allegations that each movant was required to inform the Elseths about the alleged abuse to which Allen was subjected.  The Elseths' Fourteenth Amendment due process claims are based on conclusory allegations which fail to implicate a protected liberty interest that required either movant to inform the Elseths about the alleged abuse to which Allen was subjected.  The Elseths point to no state statute that "contain[s] 'explicitly mandatory [reporting] language,' i.e., specific directives to the . . . [movants] that if . . . substantive predicates are present, a particular outcome must follow . . . " Kentucky Dep't of Corrections, 490 U.S. 454, 462 (1989)(internal citations omitted).  Sufficient factual allegations made under this type of authority is required to show that a liberty interest is at stake.  Id. at 463.  Since this showing has not been made, these claims are dismissed.

      Further, Gordon seeks dismissal of Plaintiffs' educational accommodations claim under Rule 12(b)(1), arguing the Court lacks jurisdiction over this claim.  Gordon argues the court lacks

jurisdiction over this claim because Plaintiffs have still failed to allege they exhausted administrative remedies under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400-1485 ("IDEA"), applicable this claim.  This claim was dismissed in a prior order because of Plaintiffs' failure to allege that they exhausted the IDEA administrative remedies, and Plaintiffs still have not alleged that they have exhausted the IDEA administrative remedies.

Plaintiffs allege in the FAC that "[t]he Probation Department is directed to monitor the school district's compliance with the individual Education Program." (FAC ¶ 6.1.1.1.)  Plaintiffs also allege that Allen "suffer[s] from a number [of] mental disabilities," (Id. ¶ 4.2), and that a court previously found "that Allen [is] an individual with exceptional needs."  (Id. ¶ 6.1.1.2) Further, Plaintiffs allege Allen "turned 18 on June 14, 2007," and "is no longer confined at B.T. Collins. (Id. ¶¶ 4.2, 5.4).  Although Plaintiffs indicate Allen did not receive educational services sufficient to accommodate his mental disabilities, Plaintiffs fail to clearly state how the educational services Allen received were deficient.

Further, to the extent that Allen's educational services allegations are based on educational accommodations subject to administrative remedies in the IDEA, exhaustion of those administrative remedies is required. Fraser v. v. Tamalpais Union School Dist., 281 Fed.Appx. 746, 2008 WL2338073 at *2 (9th Cir. 2008)(unpublished)(stating that even where Plaintiff "has already graduated from high school and cannot now receive any benefit from the IDEA process, exhaustion is required).  Since the IDEA provides "procedural safeguards" for issues regarding a disabled child's

educational programs and Plaintiffs do not allege they exhausted applicable administrative remedies under the IDEA, this educational accommodations claim against Gordon is dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.  See Robb v. Bethel School Dist. No. 403, 308 F.3d 1047, 1053-54 (9th Cir. 2002)(noting that "the exhaustion requirement embodies the notion that educational agencies, not the courts, ought to have primary responsibility for the educational programs that Congress has charged them to administer" and discussing the IDEA administrative procedures and remedies exhaustion issue)(internal citation omitted).

Gordon also seeks dismissal of Plaintiffs' allegations made on behalf of other wards at the juvenile hall, arguing Plaintiffs lack standing to challenge what allegedly was experienced by wards other than Allen.

"Plaintiff[s], as the only signatory to the complaint . . . [have not shown they have] standing to bring any claims on behalf of other [wards]."  Wiggins v. Alameda County Bd. Of Sup'ers, No. C 94-1172 VRW, at *2, n.1 1994 WL 327180 (N.D. Cal. June 22, 1994) referencing Jackson v. Official Representatives & Employees of Los Angeles Police Dep't, 487 F.2d 885, 886 (9th Cir. 1973)(plaintiff does not have standing to complain about deprivations of constitutional rights of others).  Plaintiffs allegations include complaints about what other wards allegedly experienced at B.T. Collins; however, Plaintiffs have not shown they have standing to allege a claim on behalf of another ward.  To establish this standing, Plaintiffs are required to show "by reason of their own injuries [they have standing] to raise the third-party constitutional challenges" of other wards.  Darring v. Kincheloe, 783 F.2d 874, 877 (9th Cir. 1986)(finding

Plaintiff lacked personal and third party standing to assert a claim for money damages without alleging he suffered an "actual injury.") Further, since Allen "is no longer confined at B.T. Collins," (FAC ¶ 5.4), Plaintiffs' request for injunctive relief concerning conditions at B.T. Collins is moot. Darring, 783 F.2d at 876 (finding Plaintiff's claim for injunctive relief based on prison conditions was moot when Plaintiff was not likely to return to the prison). Therefore, Plaintiffs' third-party damage and injunctive relief allegations are dismissed.

Lastly, Plaintiffs ask the Court to certify for interlocutory appeal the dismissal of their IDEA claims. However, Plaintiffs have not demonstrated that this ruling should be certified for interlocutory appeal. Therefore, this request is denied.

### III. LEAVE TO AMEND

Each movant seeks a ruling that all dismissals are with prejudice. Plaintiffs counter, requesting leave to amend. Since Plaintiffs have been given leave to amend three times before and yet have still failed to state sufficient claims against Saxton and Gordon, Plaintiffs' request for leave to amend their claims against Saxton and Gordon is denied. Saul v. United States, 928 F.2d 829, 843 (9th Cir. 1991) (stating leave to amend should be denied "where . . . amendment would be futile")(internal citation omitted).

//
//
//
//
//
//

## IV. CONCLUSION

For the stated reasons, Plaintiffs' conclusory allegations do not survive the dismissal motions. Therefore, the dismissal motions are granted and Plaintiffs' request for leave to amend is denied.

Dated: April 14, 2010

_____
GARLAND E. BURRELL, JR.
United States District Judge