IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROGER ARDEN ELSETH; PATRICIA        )
ANN ELSETH; and ALLEN ELSETH, by    )   2:08-cv-02890-GEB-KJM
his guardian ad litem, ROGER        )
ARDEN ELSETH and PATRICIA ANN       )
ELSETH,                             )   ORDER GRANTING MOTION FOR
                                    )   SUMMARY ADJUDICATION
               Plaintiffs,          )
                                    )
          v.                        )
                                    )
VERNON SPEIRS, Chief Probation      )
Officer of the County of            )
Sacramento, individually; DAVID     )
GORDON, Superintendent              )
Sacramento County Department of     )
Education, individually; Deputy     )
Probation Officer RONALD TAM,       )
individually; Deputy Probation      )
Officer JEFF ELORDUY,               )
individually; DR. RICHARD           )
SAXTON, M.D., individually,         )
                                    )
               Defendants.          )
_____ )

        Defendants  Verne  Speirs,  Ronald  Tam,  and  Jeff  Elorduy
("Defendants") move for summary adjudication on Plaintiffs' first claim
for "Assault and Battery upon a Juvenile." Specifically, Defendants seek
summary adjudication of the following:

        1)    Plaintiffs Patricia Elseth and Roger Elseth's first claim

              against all Defendants;

1    2)    Plaintiff Allen Elseth's first claim against Defendant
2          Verne Speirs; and
3    3)    Plaintiff Allen Elseth's first claim against Defendant
4          Ronald Tam.[1]

5        Plaintiffs did not file an opposition or statement of non-
6 opposition in response to the motion, as required by Local Rule 230(c).

7                       **I.  LEGAL STANDARD**

8        A party seeking summary judgment bears the initial burden of
9 demonstrating the absence of a genuine issue of material fact for trial.
10 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If this burden is
11 satisfied, "the non-moving party must set forth, by affidavit or as
12 otherwise provided in [Federal] Rule [of Civil Procedure] 56, specific
13 facts showing that there is a genuine issue for trial."  T.W. Elec.
14 Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th
15 Cir. 1987) (quotations and citation omitted) (emphasis omitted). This
16 requires that the non-moving party "come forward with facts, and not
17 allegations, [that] controvert the moving party's case."  Town House,
18 Inc. v. Paulino, 381 F.2d 811, 814 (9th Cir. 1967) (citation omitted).
19 All reasonable inferences that can be drawn from the evidence "must be
20 drawn in favor of the non-moving party."  Bryan v. McPherson, 608 F.3d
21 614, 619 (9th Cir. 2010).

22        When the defendant is the moving party and is seeking summary
23 judgment on one or more of plaintiff's claims,

24       "[The defendant] has both the initial burden of
         production and the ultimate burden of persuasion on
25       [the motion]. In order to carry its burden of

26 _____

27       [1]    Defendant Jeff Elorduy is moving for summary adjudication only
as to Plaintiffs Patricia Elseth and Roger Elseth. He is not seeking
28 summary adjudication on the claim against Plaintiff Allen Elseth.
(Def.'s Mem. of P.&A. in Supp. of Mot. for Summ. Adjud. 2 n.1.)

                                  2

1    production, the [defendant] must either produce
     evidence negating an essential element of the
2    [plaintiff's claim] or show that the [plaintiff]
     does not have enough evidence of an essential
3    element to carry its ultimate burden of persuasion
     at trial. In order to carry its ultimate burden of
4    persuasion on the motion, the [defendant] must
     persuade the court that there is no genuine issue
5    of material fact."

6  Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d

7  1099, 1102 (9th Cir. 2000)(citations omitted).

8          The Eastern District's Local Rule 260(b) further requires:

9          Any party opposing a motion for summary judgment or
           summary adjudication [must] reproduce the itemized
10         facts in the [moving party's] Statement of
           Undisputed Facts and admit those facts that are
11         undisputed and deny those that are disputed,
           including with each denial a citation to the
12         particular portions of any pleading, affidavit,
           deposition, interrogatory answer, admission, or
13         other document relied upon in support of that
           denial.
14

15 E.D. Cal. R. 260(b). "If the moving party's statement of facts are not

16 controverted in this manner, the Court may assume the facts as claimed

17 by the moving party are admitted to exist without controversy."

18 Farrakhan v. Gregoire, 590 F.3d 989, 1002 (9th Cir. 2010) (quoting Beard

19 v. Banks, 548 U.S. 521, 527 (2006)) (finding that a party opposing

20 summary judgment who "fail[s] [to] specifically challenge the facts

21 identified in the [moving party's] statement of undisputed facts . . .

22 is deemed to have admitted the validity of [those] facts . . . .").

23                      **II. UNCONTROVERTED FACTS**

24         On December 5, 2006, Plaintiff Allen Elseth ("Allen") was

25 housed at the Sacramento County Juvenile Hall. (Defs.' Statement of

26 Undisputed Facts ("SUF") #10.) That morning, an officer noticed Allen

27 was standing in the doorway of his cell looking out the window, which

28

                                        3

1 | was against the rules. Id. #11. The officer asked him to back away from
2 | the window, but Allen refused. Id.

3 | Sometime thereafter, Defendants Ronald Tam ("Tam") and Jeff
4 | Elorduy ("Elorduy"), who were on-duty as members of the facility's
5 | security response team, were called to respond to a disruption in
6 | Allen's room. Id. #12. Tam and Elorduy went to his room and admonished
7 | Allen to follow the rules. Id.

8 | Shortly thereafter, Elorduy and Tam received another call to
9 | respond to Allen's room. Id. #13. They went to the housing unit and met
10 | with Probation Assistant Iohola Thomas ("Thomas"), who told them that
11 | Allen was kicking his door and yelling gang slurs and derogatory
12 | comments. Id. Thomas, Elorduy and Tam went to Allen's room, where he was
13 | laying on his bed. Id. 14. Allen denied he was the person who had been
14 | yelling and kicking the door. Id.

15 | Eventually, Thomas asked Elorduy and Tam to remove Allen from
16 | his room. Id. #15. Elorduy placed Allen's left arm in an arm bar, and
17 | Thomas did the same with his right arm. Id. Tam restrained Allen's legs.
18 | Id. Thomas and Elorduy then transitioned Allen into a rear wrist lock.
19 | Id. Allen alleges that during this interaction, Elorduy struck him in
20 | the face. Id. #16. He does not allege that Thomas or Tam hit him. Id.

21 | After the officers secured Allen, Elorduy grabbed one of
22 | Allen's shoulders, Thomas grabbed the other shoulder, and Tam grabbed
23 | his feet and carried him out of the room. Id. #17.

24 | Tam did not strike Allen, or cause any part of Allen's face to
25 | come into contact with something, at any time during his interactions
26 | with him on December 5, 2006. Id. #21.

27 |

28 |

1        At the time of the incident, Defendant Verne Speirs ("Speirs")
2   was the Chief Probation Officer of the Sacramento County Probation
3   Department. Id. #7. He was not involved in removing Allen from his room,
4   nor did he have any role in supervising his removal. Id. #19.

5        Allen does not remember ever meeting or talking to Speirs. Id.
6   #20. Before the filing of this action, Plaintiffs Roger Elseth and
7   Patricia Elseth had no contact with any of the Defendants. Id. #23.

8        Prior to December 5, 2006, Tam and Elorduy received training
9   regarding the use of force on juveniles and how to respond to situations
10  in Juvenile Hall. Id. #22. They were also aware that the County of
11  Sacramento had a use of force policy in effect at the time, and received
12  training concerning that policy prior to December 5, 2006. Id.

13       The Sacramento County Probation Department ("Department")
14  created a distinct training unit that specialized in teaching Probation
15  Assistants and Deputy Probation Officers the proper methods for handling
16  juveniles in detention and use of force. Id. #24. Outside trainers were
17  brought in to provide routine and specialized "JIREH training" and
18  training regarding crisis de-escalation. Id. The Department also sent
19  staff members to training sessions around the country to learn the most
20  advanced techniques to incorporate within the Department's training. Id.

21       As of December 5, 2006, the Department also had established
22  policies governing the complaints of staff misconduct, including
23  excessive force. Id. #25. The policies required prompt and impartial
24  investigations of all complaints. Id. If a complaint was sustained, the
25  Department took timely, appropriate corrective and disciplinary action.
26  Id.

27

28

1       The Department investigated Allen's allegations concerning his

2 removal from his room on December 5, 2006 and concluded Allen's

3 allegations of excessive force were unfounded. <u>Id.</u> 26.

4 **III. DISCUSSION**

5       Plaintiffs allege this action is premised on 28 U.S.C. §

6 1343(a)(3) and 42 U.S.C. § 1983 and is brought to "redress the

7 deprivation of civil rights arising under the Constitution of the United

8 States, [the] 8th Amendment (Cruel and Unusual Punishment) and [the]

9 14th Amendment § 1, to redress injuries inflicted under color of law,

10 and the denial of both substantive due process and procedural due

11 process." (Fifth Am. Compl. ¶ 1.1.) The only claim asserted against

12 Defendants is Plaintiffs' first claim, which is titled "Assault and

13 Battery Upon a Juvenile." <u>Id.</u> at 13:24-14-20.

14       Plaintiffs sued Speirs, Tam, and Elorduy in their individual

15 capacities. Plaintiffs' allegations under the first claim include the

16 following:

17         On or about 12/05/2006, CERT team members,
including Tam and Elorduy, acting under color of

18         state law, secured [Allen] in a private room and
inflicted corporal punishment without due process

19         or provocation, by beating him for a period of time
causing severe personal injuries, emotional

20         distress, and pain.

21         Speirs by his administrative indifference or
willful neglect, failed to train the CERT team in

22         the proper methods of response to situations in the
Juvenile Centers, and the limits of their authority

23         to inflict corporal punishment upon the minors
housed therein.

24

25         Speirs by his administrative indifference or
willful neglect, created an environment of

26         hostility that permitted Tam and Elorduy to
subjectively, but objectively unreasonably, believe

27         their conduct was authorized.

28 (Fifth Am. Compl. ¶¶ 4.3, 4.5, 7.3, 7.4, 7.5.)

6

1       **A.    Plaintiffs Roger Elseth and Patricia Elseth's Claim against**
2              **Defendants**

3              Defendants contend they are entitled to summary adjudication
4    against Plaintiffs Patricia Elseth and Roger Elseth, arguing, *inter*
5    *alia,* "there are no facts alleged to show that [they] suffered any
6    injury as a result of the action or inaction of Defendants[;]"
7    therefore, they "lack standing to make a claim against [them]." (Mot.
8    7:14-15, 7:26-28.)

9              To establish standing in federal court, "[a] plaintiff must
10   allege personal injury fairly traceable to the defendant's allegedly
11   unlawful conduct and likely to be redressed by the requested relief."
12   Allen v. Wright, 468 U.S. 737, 751 (1984). Further, the injury must be
13   "particularized," i.e. it "must affect the plaintiff in a personal and
14   individual way." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 n.1
15   (1992). A plaintiff generally "cannot rest his claim to relief on the
16   legal rights or interests of [others]." Madrigal v. Tommy Bahama Group,
17   Inc., No. CV 09-08924 SJO (MANx), 2010 WL 4384235 (C.D. Cal. 2010)
18   (quoting Warth v. Seldon, 422 U.S. 490, 499 (1975).)

19             Although Roger Elseth and Patricia Elseth are listed as
20   Plaintiffs in this claim, they do not allege that they have suffered any
21   injury caused by Defendants. Patricia Elseth and Roger Elseth are not
22   even mentioned in the allegations specific to the first claim. (Fifth
23   Am. Compl. 13:24-14-20.) Further, it is uncontroverted that Tam, Elorduy
24   and Speirs had no contact with Patricia Elseth or Roger Elseth until
25   after this federal lawsuit was filed. Therefore, Defendants have shown
26   the absence of a genuine issue of material fact on this issue, and
27   Defendants' motion for summary adjudication on Patricia Elseth and Roger
28   Elseth's first claim is granted.

1        **B.      Plaintiff Allen Elseth's Claim against Defendant Verne Speirs**

2              Defendant  Verne  Speirs  argues  he  is  entitled  to  summary

3  adjudication  against  Allen  since  Allen  "does  not  allege  that  [he]

4  personally participated in [his removal from his room]" and "there are

5  no  facts  or  evidence  [to]  support  a  supervisory  liability  claim  against

6  [him]." (Mot. 9:9-10, 9:18-19.)

7              To recover under 42 U.S.C. § 1983 against an individual in his

8  or  her  supervisory  capacity,  a  plaintiff  must  prove  the  defendant

9  "directed  his  or  her  subordinates  to  commit  the  offensive  act,"  "set

10  into  motion  a  series  of  acts  by  others  which  he  knew  or  reasonably

11  should  have  known  would  cause  others  to  inflict  the  constitutional

12  injury,"  "knew  of  the  violations  being  committed  by  subordinates  yet

13  failed  to  act  to  prevent  them,"  or  "acquiesc[ed]  in  the  constitutional

14  deprivations  of  which  the  complaint  is  made."  Gonzalez  v.  City  of

15  Fresno,  No.  1:06-cv-01751-OWW-TAG,  2009  WL  2208300,  at  *4  (E.D.  Cal.

16  2009)  (quotations  and  citations  omitted).  "The  Ninth  Circuit  also

17  recognizes  that  '[s]upervisory  liability  [can  be]  imposed  against  a

18  supervisory  official  in  his  individual  capacity  for  his  own  culpable

19  action  or  inaction  in  the  training,  supervision,  or  control  of  his

20  subordinates . . . .'"  Id.  (quoting  Menotti  v.  City  of  Seattle,  409  F.3d

21  1113, 1149 (9th Cir.2005).)

22              While  the  Ninth  Circuit  has  articulated  various
              circumstances  in  which  a  supervisor  can  be  liable
23            in  a  §  1983  case,  the  common  theme  is  that  to
              impose  individual  liability  on  a  supervisor,  the
24            supervisor  must  have  either  taken  part  in  the
              alleged constitutional violation or in some manner
25            caused  the  constitutional  violation  through  his  or
              her  own  culpable  action  or  inaction.

26

27   Id. at *5 (quotation and citations omitted).

28

1    Here, the unopposed Declaration of Verne Speirs and Allen's

2  deposition testimony evidence that Speirs did not personally participate

3  in, nor did he supervise, Allen's removal from his room. (Allen Depo.

4  144:2-8, Defs.' App. of Ex., Ex. B; Verne Decl. ¶8, Ex. H.) Further, it

5  is undisputed that the Department had policies in effect at the time of

6  the alleged incident concerning both the use of force on juveniles and

7  complaints about staff misconduct. The Department had a separate

8  training unit, which specialized in training officers concerning the use

9  of force and the proper methods in handling juveniles in detention, and

10  both Tam and Elorduy declare they received such training prior to the

11  incident. (Elorduy Decl. ¶ 7, Ex. I; Tam Decl. ¶ 7, Ex. J.) Lastly, it

12  is uncontroverted that the Department conducted an internal

13  investigation into Allen's allegations.

14    There is no evidence that Speirs "[took] part in [Allen's]

15  alleged constitutional violation or in some manner caused the

16  constitutional violation through [his] own culpable action or inaction."

17  Gonzalez v. City of Fresno, 2009 WL 2208300, at *5. Therefore, Speirs'

18  motion for summary adjudication on Allen Elseth's first claim is

19  granted.

20    **C.    Plaintiff Allen Elseth's Claim against Defendant Ronald Tam**

21    Defendant Ronald Tam moves for summary judgment on Allen

22  Elseth's first claim, arguing, *inter alia*, "the law is not clearly

23  established that a deputy probation officer can be held liable . . .

24  simply by holding a juvenile's legs to secure him . . . or by assisting

25  in carrying the juvenile out of his room[;]" therefore, he is entitled

26  to qualified immunity. (Mot. 13:1-8.)

27    The doctrine of qualified immunity "protects government

28  officials from liability for civil damages insofar as their conduct does

1   not violate clearly established statutory or constitutional rights of

2   which a reasonable person would have known." Pearson v. Callahan, 129

3   S. Ct. 808, 815 (2009) (quotation omitted). A defendant's entitlement to

4   qualified immunity is evaluated using a two-step inquiry. Saucier v.

5   Katz, 533 U.S. 194, 200 (2001) (quotation omitted). Under Saucier's

6   first step, the court must consider "whether, taken in the light most

7   favorable to the party asserting the injury, the facts alleged show the

8   officer's conduct violated a constitutional right." Ramirez v. City of

9   Buena Park, 560 F.3d 1012, 1020 (9th Cir. 2009) (quotation omitted).

10  Under Saucier's second step, the court asks "if the right was clearly

11  established." Id. (quotation omitted). "The relevant, dispositive

12  inquiry in determining whether a right is clearly established is whether

13  it would be clear to a reasonable officer that his conduct was unlawful

14  in the situation he confronted." Saucier v. Katz, 533 U.S. at 202

15  (citation omitted). It is within the district court's "sound discretion

16  in deciding which of the two prongs of the qualified immunity analysis

17  should be addressed first in light of the circumstances of the

18  particular case at hand." Pearson v. Callahan, 129 S. Ct. at 818.

19          The gravaman of Allen's first claim is his allegation that he

20  was subjected to "corporal punishment" when Tam and Elorduy "beat[] him

21  for a period of time." (Fifth Am. Compl. ¶ 7.2.) However, Allen gave

22  deposition testimony that only Elorduy hit him, and Tam declares his

23  only physical contact with Allen was "plac[ing] his legs in a figure

24  four[,]" and holding him by his feet when he, Elorduy and Thomas removed

25  him from his room. (Allen Depo. 143:9-17, Ex. B; Tam Decl. ¶¶ 4-6, Ex.

26  J.) Tam further declares that at no time during his interactions with

27  Allen did he strike him or cause any part of his face to come into

28  contact with something.  (Tam Decl. ¶¶ 6, Ex. J.)  It would not be clear

1  to a reasonable officer that such conduct was unlawful under the

2  circumstances in which Tam acted, i.e. being asked to remove a person

3  from their room in a juvenile detention center after responding to two

4  disturbance calls involving that person. See Hudson v. McMillian, 503

5  U.S. 1, 5-6 (1992) ("[W]henever prison officials stand accused of using

6  excessive physical force in violation of the Cruel and Unusual

7  Punishments Clause, the core judicial inquiry is . . . whether force was

8  applied in a good-faith effort to maintain or restore discipline, or

9  maliciously and sadistically to cause harm."); White v. Roper, 901 F.2d

10 1501, 1506-1507 (9th Cir. 1990) (holding "egregious government conduct

11 in the form of excessive and brutal force constitutes a violation of

12 substantive due cognizable under section 1983"). Therefore, Tam's motion

13 for summary adjudication on Allen Elseth's first claim is granted.

**IV. CONCLUSION**

15      For the stated reasons, Defendants' motion for summary

16 adjudication is GRANTED.

17 Dated:  November 19, 2010

19                GARLAND E. BURRELL, JR.

20                United States District Judge

11