IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROGER ARDEN ELSETH; PATRICIA
ANN ELSETH; and ALLEN ELSETH, by
his guardian ad litem, ROGER
ARDEN ELSETH and PATRICIA ANN
ELSETH,

              Plaintiffs,

       v.

VERNON SPEIRS, Chief Probation
Officer of the County of
Sacramento, individually; Deputy
Probation Officer RONALD TAM,
individually; and Deputy
Probation Officer JEFF ELORDUY,
individually,

              Defendants.

_____

2:08-cv-02890-GEB-CMK

<u>ORDER GRANTING MOTION FOR
SUMMARY ADJUDICATION</u>[*]

Defendants Verne Speirs, Ronald Tam, and Jeff Elorduy
("Defendants") move for summary adjudication on Plaintiffs' first claim,
which is titled "Assault and Battery upon a Juvenile." Specifically,
Defendants seek summary adjudication of the following issues:

      1)   Plaintiffs Patricia Elseth and Roger Elseth's first claim
            against all Defendants;

      2)   Plaintiff Allen Elseth's first claim against Defendant
            Verne Speirs; and

---

[*]    This matter is deemed suitable for decision without oral
argument. E.D. Cal. R. 230(g).

3)   Plaintiff Allen Elseth's first claim against Defendant Ronald Tam.[2]

For the reasons stated below, each Defendant's motion for summary adjudication will be granted.

## I.   LEGAL STANDARD

A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case." Thrifty Oil Co. v. Bank of America Nat. Trust and Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. (quotation omitted).

When the defendant is the moving party and is seeking summary judgment on one or more of a plaintiff's claims,

> [The defendant] has both the initial burden of production and the ultimate burden of persuasion on [the motion]. In order to carry its burden of production, the [defendant] must either produce evidence negating an essential element of the [plaintiff's claim] or show that the [plaintiff] does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. In order to carry its ultimate burden of persuasion on the motion, the [defendant] must persuade the court that there is no genuine issue of material fact.

---

[2]   Defendant Jeff Elorduy is moving for summary adjudication only on Plaintiffs Patricia Elseth and Roger Elseth's claim. He is not seeking summary adjudication on Plaintiff Allen Elseth's claim. (Def.'s Mem. of P.&A. in Supp. of Mot. for Summ. Adjud. 2 n.1.)

1 | _Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc._, 210 F.3d

2 | 1099, 1102 (9th Cir. 2000)(citations omitted).

3 |    If the moving party satisfies its initial burden, "the non-

4 | moving party must set forth, by affidavit or as otherwise provided in

5 | [Federal] Rule [of Civil Procedure] 56, specific facts showing that

6 | there is a genuine issue for trial." _T.W. Elec. Serv., Inc. v. Pacific_

7 | _Elec. Contractors Ass'n_, 809 F.2d 626, 630 (9th Cir. 1987) (quotations

8 | and citation omitted) (emphasis omitted). "[The] non-moving plaintiff

9 | cannot rest upon the mere allegations or denials of the adverse party's

10 | pleading but must instead produce evidence that sets forth specific

11 | facts showing that there is a genuine issue for trial." _Estate of Tucker_

12 | _ex rel. Tucker v. Interscope Records, Inc._, 515 F.3d 1019, 1030 (9th

13 | Cir. 2008) (quotation omitted).

14 |    Evidence must be viewed "in the light most favorable to the

15 | non-moving party," and all "all reasonable inferences" that can be drawn

16 | from the evidence must be drawn "in favor of [the non-moving] party."

17 | _Nunez v. Duncan_, 591 F.3d 1217, 1222-23 (9th Cir. 2010).

18 |    Local Rule 260(b) further requires:

19 |    Any party opposing a motion for summary judgment or

20 |    summary adjudication [must] reproduce the itemized facts in the [moving party's] Statement of

21 |    Undisputed Facts and admit those facts that are undisputed and deny those that are disputed,

22 |    including with each denial a citation to the particular portions of any pleading, affidavit,

23 |    deposition, interrogatory answer, admission, or other document relied upon in support of that

24 |    denial.

25 | It is the non-moving party's obligation to "identify with reasonable

26 | particularity the evidence that precludes summary judgment." _Simmons v._

27 | _Navajo County, Ariz._, 609 F.3d 1011, 1017 (9th Cir. 2010) (quotation

28 | omitted). The district court "has no independent duty to scour the

record in search of a genuine issue of triable fact." <u>Id.</u> (quotation omitted).

## II. UNCONTROVERTED FACTS

On December 5, 2006, Plaintiff Allen Elseth ("Allen") was housed at the Sacramento County Juvenile Hall. (Pls.' Resp. to Defs.' Statement of Undisputed Facts ("SUF") #10.) That morning, an officer noticed Allen was standing in the doorway of his cell looking out the window, which was against the rules. <u>Id.</u> #11. The officer asked him to back away from the window, but Allen refused. <u>Id.</u>

Sometime thereafter, Defendants Ronald Tam ("Tam") and Jeff Elorduy ("Elorduy"), who were on-duty as members of the facility's security response team, were called to respond to a disruption in Allen's room. <u>Id.</u> #12. Tam and Elorduy went to his room and admonished Allen to follow the rules. <u>Id.</u>

Shortly thereafter, Elorduy and Tam received another call to respond to Allen's room. <u>Id.</u> #13. They went to the housing unit and met with Probation Assistant Iohola Thomas ("Thomas"), who told them that Allen was kicking his door and yelling gang slurs and derogatory comments. <u>Id.</u>  Thomas, Elorduy and Tam went to Allen's room, where he was laying on his bed. <u>Id.</u> #14. Allen denied he was the person who had been yelling and kicking the door. <u>Id.</u>

Eventually, Thomas asked Elorduy and Tam to remove Allen from his room. <u>Id.</u> #15. Elorduy placed Allen's left arm in an arm bar, and Thomas did the same with his right arm. <u>Id.</u> Tam restrained Allen's legs. <u>Id.</u> Thomas and Elorduy then transitioned Allen into a rear wrist lock. <u>Id.</u> Allen alleges that during this interaction, Elorduy struck him in the face. <u>Id.</u> #16. He denies that Thomas or Tam hit him. <u>Id.</u>

After the officers secured Allen, Elorduy grabbed one of Allen's shoulders, Thomas grabbed the other shoulder, and Tam grabbed his feet and carried him out of the room. Id. #17.

At the time of the incident, Defendant Verne Speirs ("Speirs") was the Chief Probation Officer of the Sacramento County Probation Department. Id. #7. He was not involved in removing Allen from his room and did not supervise his removal. Id. #19.

Allen does not remember ever meeting or talking to Speirs. Id. #20. Before the filing of this action, Plaintiffs Roger Elseth and Patricia Elseth had no contact with any Defendant. Id. #23.

Prior to December 5, 2006, Tam and Elorduy received training regarding the use of force on juveniles and how to respond to situations in Juvenile Hall. Id. #22. They were also aware that the County of Sacramento had a use of force policy in effect at the time, and received training on that policy prior to December 5, 2006. Id.

The Sacramento County Probation Department ("Department") created a distinct training unit that specialized in teaching Probation Assistants and Deputy Probation Officers the proper methods for handling juveniles in detention and use of force. Id. #24. Outside trainers were brought in to provide routine training and specialized training on crisis de-escalation. Id. The Department also sent staff members to training sessions around the country to learn the most advanced techniques to incorporate within the Department's training. Id.

As of December 5, 2006, the Department also had established policies governing complaints of staff misconduct, including excessive force. Id. #25. The policies required prompt and impartial investigations of all complaints. Id.

1    The Department investigated Allen's allegations concerning his
2    removal from his room on December 5, 2006 and concluded Allen's
3    allegations of excessive force were unfounded. Id. #26.

4                            **III. DISCUSSION**

5    Plaintiffs allege this action is premised on 28 U.S.C. §
6    1343(a)(3) and 42 U.S.C. § 1983 and is brought to "redress the
7    deprivation of civil rights arising under the Constitution of the United
8    States, [the] 8th Amendment (Cruel and Unusual Punishment) and [the]
9    14th Amendment § 1, to redress injuries inflicted under color of law,
10   and the denial of both substantive due process and procedural due
11   process." (Fifth Am. Compl. ¶ 1.1.) The only claim asserted against
12   Defendants is Plaintiffs' first claim, which is titled "Assault and
13   Battery Upon a Juvenile." Id. at 13:24-14-20.

14   Plaintiffs' first claim concerns the following allegations
15   against Speirs, Tam, and Elorduy:

16          On or about 12/05/2006, CERT team members,
            including Tam and Elorduy, acting under color of
17          state law, secured [Allen] in a private room and
            inflicted corporal punishment without due process
18          or provocation, by beating him for a period of time
            causing severe personal injuries, emotional
19          distress, and pain.

20          Speirs by his administrative indifference or
            willful neglect, failed to train the CERT team in
21          the proper methods of response to situations in the
            Juvenile Centers, and the limits of their authority
22          to inflict corporal punishment upon the minors
            housed therein.
23
            Speirs by his administrative indifference or
24          willful neglect, created an environment of
            hostility that permitted Tam and Elorduy to
25          subjectively, but objectively unreasonably, believe
            their conduct was authorized.
26
27   (Fifth Am. Compl. ¶¶ 4.3, 4.5, 7.3, 7.4, 7.5.)

28

**A.   Plaintiffs Roger Elseth and Patricia Elseth's Claim against Defendants**

Defendants contend they are entitled to summary adjudication on Plaintiffs Patricia Elseth and Roger Elseth's first claim, arguing, *inter alia,* "there are no facts alleged to show that [they] suffered any injury as a result of the action or inaction of Defendants[;]" therefore, they "lack standing to make a claim against [them]." (Mot. 7:14-15, 7:26-28.) Plaintiffs rejoin that "[t]hey have standing to sue to attempt to redress wrongs they believe were perpetrated upon their son." (Pls.' Opp'n ("Opp'n") 14:13-14.)

To establish standing in federal court, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Allen v. Wright, 468 U.S. 737, 751 (1984). Further, the injury must be "particularized," i.e. it "must affect the plaintiff in a personal and individual way." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 n.1 (1992). A plaintiff generally "cannot rest his claim to relief on the legal rights or interests of [others]." Madrigal v. Tommy Bahama Group, Inc., No. CV 09-08924 SJO (MANx), 2010 WL 4384235, at *4 (C.D. Cal. Oct. 18, 2010) (quoting Warth v. Seldon, 422 U.S. 490, 499 (1975).)

Although Roger Elseth and Patricia Elseth are listed as Plaintiffs in this claim, they do not allege that they have suffered any injury caused by Defendants. Patricia Elseth and Roger Elseth are not even mentioned in the allegations specific to the first claim . (Fifth Am. Compl. 13:24-14-20.) Further, it is uncontroverted that Tam, Elorduy and Speirs had no contact with Patricia Elseth or Roger Elseth until after this federal lawsuit was filed. Therefore, Defendants have shown the absence of a genuine issue of material fact on this standing issue.

1    Plaintiffs request in their Opposition leave to amend the
2    Fifth Amended Complaint "to substitute Speirs as the defendant in the
3    third [claim for Failure to Protect]," which was alleged only against
4    former defendant Richard Saxton, M.D. (Opp'n 5:4-6, 13:15-19, 16:9-10.)
5    Plaintiffs' counsel declares "[d]uring the period that [he] filed the
6    [Fifth] Amended complaint, [he] was under stress and time constraints,"
7    and "[e]vidently . . . struck the claim [as to] Gordon and Speirs,
8    leaving Saxton by mistake and inadvertence." (Decl. of Lynch, 1:18-23.)
9    Plaintiffs also argue since "the allegations are all the same,"
10   "Defendants cannot claim prejudice." (Opp'n at 13:17-19.) Defendants
11   oppose Plaintiffs' request, arguing "an amendment just two months before
12   trial would cause great prejudice to Defendants as no discovery has been
13   conducted into the claims Plaintiffs now attempt to bring." (Defs. Reply
14   ("Reply") 12:6-8.) Defendants further counter, Plaintiffs' counsel's
15   claim that he inadvertently "dropped" the third claim against Gordon and
16   Speirs "is incorrect" since a "review of the Fourth Amended Complaint
17   reveals that even in that document . . . the [t]hird [claim] was only
18   asserted against Saxton." (Reply 6:9-19.)

19   Plaintiffs' request for leave to amend is not properly before
20   the court, since it was not made in a noticed motion. See E.D. Cal. R.
21   230 (b). Further, Plaintiffs have not shown "good cause," to amend the
22   Status (Pretrial Scheduling) Order, in which the last dates for
23   amendment, discovery and law and motion are prescribed. Fed. R. Civ.
24   Proc. 16(b)(4); see Johnson v. Mammoth Recreations, Inc., 975 F.2d 604,
25   607-08 (9th Cir. 1992) (indicating when a party moves to amend his or
26   her complaint after a Federal Rule of Civil Procedure 16 scheduling
27   order has been filed, the amendment issue is reached only if the party
28   shows "good cause" to amend the scheduling order). Plaintiffs provide no

explanation for their delay in seeking to amend the Fifth Amended Complaint approximately fourteen months after it was filed. (Decl. of Lynch, 1.)

For the stated reasons, Defendants' motion for summary adjudication on Patricia Elseth and Roger Elseth's first claim is granted.

**B.   Plaintiff Allen Elseth's Claim against Defendant Verne Speirs**

Defendant Verne Speirs argues he is entitled to summary adjudication of Allen's excessive force claim since Allen "does not allege that Speirs personally participated in [Allen's removal from his room]" and "there are no facts or evidence [to] support a supervisory liability claim against [him]." (Mot. 9:9-10, 9:18-19.) Plaintiff rejoins, "there are facts . . . that support a supervisory liability claim against Speirs" since no report of suspected child abuse was made to Child Protection Services in connection with Allen's alleged injuries, Elorduy and Tam did "not understand that they were required to report 'suspected' [child] abuse" as mandated under California law, and mandatory child abuse reporting was not reflected in the Department's policies and procedures. (Opp'n 6:10-17, 16:20, 19:22-20:3.) Defendants reply that Plaintiffs are attempting to improperly introduce a "new theory of liability into the case[, which was] not alleged against [Speirs] in the Fifth Amended Complaint." (Reply 8:12-14.)

To recover under 42 U.S.C. § 1983 against an individual in his or her supervisory capacity, a plaintiff must prove the defendant "directed his or her subordinates to commit the offensive act," "set into motion a series of acts by others which he knew or reasonably should have known would cause others to inflict the constitutional injury," "knew of the violations being committed by subordinates yet

failed to act to prevent them," or "acquiesc[ed] in the constitutional deprivations of which the complaint is made." Gonzalez v. City of Fresno, No. 1:06-cv-01751-OWW-TAG, 2009 WL 2208300, at *4 (E.D. Cal. July 23, 2009) (quotations and citations omitted). "The Ninth Circuit also recognizes that '[s]upervisory liability [can be] imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates . . . .'" Id. (quoting Menotti v. City of Seattle, 409 F.3d 1113, 1149 (9th Cir.2005).)

> While the Ninth Circuit has articulated various circumstances in which a supervisor can be liable in a § 1983 case, the common theme is that to impose individual liability on a supervisor, the supervisor must have either taken part in the alleged constitutional violation or in some manner caused the constitutional violation through his or her own culpable action or inaction.

Id. at *5 (quotation and citations omitted).

Here, the unopposed Declaration of Verne Speirs and Allen's deposition testimony evince that Speirs neither personally participated in, nor supervised, Allen's removal from his room. (Allen Depo. 144:2-8, Defs.' App. of Ex., Ex. B; Verne Decl. ¶8, Ex. H.) Further, it is undisputed that the Department had policies in effect at the time of the alleged incident concerning both the use of force on juveniles and complaints about staff misconduct, and the Department had a separate training unit, which specialized in training officers on the use of force and the proper methods in handling juveniles in detention. Both Tam and Elorduy declare they received such training prior to the incident. (Elorduy Decl. ¶ 7, Ex. I; Tam Decl. ¶ 7, Ex. J.) Lastly, it is uncontroverted that the Department conducted an internal investigation into Allen's allegations.

Plaintiffs did not allege any inadequacies concerning mandatory child abuse reporting as a basis for Speirs' supervisory liability in their Fifth Amended Complaint. (Fifth Am. Compl. ¶¶ 7.3-7.4.) Therefore, Plaintiffs cannot rely upon such allegations to oppose Defendants' motion for summary adjudication. Montoya v. Time Warner Telecom Holdings, Inc., No. 1:08-CV-00227 AWI-DLB, 2009 WL 3157529, at *11 (E.D. Cal. Sept. 28, 2009) ("A party cannot oppose summary judgment on grounds not in issue under the pleadings.") (citing Navajo Nation v. U.S. Forest Serv., 535 F.3d 1058, 1080 (9th Cir. 2008)). "The purpose of the complaint . . . is to apprise defendants of the claims which will be made and for which an answer and defense prepared. Plaintiff may not, by way of opposition to summary judgment, expand his claims into areas not fairly encompassed by the complaint." Soto v. Runnels, No. Civ S-04-0571 FCD GGH P, 2006 WL 1837906, at *3 (E.D. Cal. July 5, 2006), Report and Recommendation adopted by 2006 WL 2549128 (E.D. Cal. Sep. 1, 2006), aff'd, 265 Fed. Appx. 605 (9th Cir. 2008).

Since there is no evidence in the record that Speirs "[took] part in [Allen's] alleged constitutional violation or in some manner caused the constitutional violation through [his] own culpable action or inaction," Speirs' motion for summary adjudication on Allen Elseth's first claim is granted. Gonzalez v. City of Fresno, 2009 WL 2208300, at *5.

## C.   Plaintiff Allen Elseth's Claim against Defendant Ronald Tam

Defendant Ronald Tam moves for summary judgment on Allen Elseth's first claim, arguing, inter alia, "there is no evidence that Tam subjected [Plaintiff] to cruel and unusual punishment." (Mot. 12:23-25.) Plaintiffs counter, a "triable issue of material fact" exists on the claim against Tam because both Tam and Elorduy "admit [to]

restraining Allen," and Tam did nothing to prevent the injury. (Opp'n 7:2-5, 21:3-12.)

The gravamen of Allen's first claim is his allegation that he was subjected to "corporal punishment" when Tam and Elorduy "beat[] him for a period of time." (Fifth Am. Compl. ¶ 7.2.) However, Allen gave deposition testimony that only Elorduy hit him, and Tam declares his only physical contact with Allen was "plac[ing] his legs in a figure four[,]" and holding him by his feet when he, Elorduy and Thomas removed Allen from his room. (Allen Depo. 143:9-17, Ex. B; Tam Decl. ¶¶ 4-6, Ex. J.) Tam further declares he did not strike Allen or cause any part of Allen's face to come into contact with anything during his interactions with Allen. (Tam Decl. ¶6, Ex. J.)

Plaintiffs contend circumstantial evidence disputes Tam's averment that he did not strike Allen's face, including the "history of present illness" section of a Forensic Medical Consultation dated February 14, 2007 ("Consultation"). (SUF # 16, 21.) Defendants object to the entirety of the Consultation on hearsay grounds. (Defs.' Objections to Evid. 5:6-7.)

The relevant portion of the Consultation states:

> Allen is a 17-year-old made adolescent detained at the Sacramento County Juvenile Hall when he suffered injuries to his face and eyes on December 5, 2006. He reported to the staff, his attorney, and his parents that he was beaten by staff. Specifically, he reported that on December 5, 2006, the staff . . . held Allen down, and hit him in the face three times . . . ."

(Decl. of Sheri Patricle, Ex. 1.)

Notwithstanding Defendants' evidentiary objection, the Consultation does not create a genuine issue of fact that Tam struck Allen, especially when considered against Allen's own, specific

1 testimony that only Elorduy hit him; Tam never hit him. (Allen Depo.
2 143:9-17, Ex. B.) Therefore, Defendants have shown the absence of a
3 genuine issue of material fact on this issue.

4       Further, Plaintiffs did not allege a failure to protect theory
5 of liability against Tam in their Fifth Amended Complaint. (Fifth Am.
6 Compl. ¶ 7.2.)   Therefore, they cannot rely upon this theory in
7 opposition to Defendants' summary adjudication motion. See Torres v.
8 City of Madera, 655 F. Supp. 2d 1109, 1128 (E.D. Cal. 2009) ("A
9 plaintiff cannot raise a new theory of liability in [his] opposition to
10 a motion for summary judgement or adjudication.") (citations omitted).
11 Accordingly, Tam's motion for summary adjudication on Allen Elseth's
12 first claim is granted.

13                          **IV. CONCLUSION**

14       For the stated reasons, each Defendant's motion for summary
15 adjudication is GRANTED.

16 Dated:  February 24, 2011

17

18                          _____
                            GARLAND E. BURRELL, JR.
19                          United States District Judge

20

21

22

23

24

25

26

27

28